IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MARÍA E. BRADY, et al.,

Plaintiffs

v.                                                          CIVIL 07-1085 (ADC)

HOSPITAL HIMA-SAN PABLO
BAYAMÓN, et al.,

Defendants

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the court on defendant Dr. María Y. Batlle Quidgley's motion *in limine* to exclude Dr. Kenneth Brown (hereinafter "Dr. Brown") from testifying as an expert witness. (Docket No. 66.) On September 11, 2009, the plaintiffs, María, Frederick, John, Michelle and Frances Brady filed a motion in opposition to Dr. Brown's exclusion. (Docket No. 69.) Having considered the arguments of the parties and for the reasons set forth below, it is my recommendation that defendant's motion to exclude Dr. Brown as an expert witness be DENIED.

I.  BACKGROUND

On January 31, 2007, plaintiffs filed a complaint against several defendants including Dr. Batlle, and on July 31, 2007, they filed an amended complaint. (Docket Nos. 1 & 19.)  Plaintiffs claim that defendant Dr. Batlle provided

CIVIL 07-1085 (ADC)                              2

inadequate medical treatment to Mr. Richard M. Brady (hereinafter "Mr. Brady") at the Emergency Room of Hospital HIMA San Pablo.  In essence, plaintiffs allege that Dr. Batlle did not diagnose and treat Mr. Brady's condition according to the standard of good medical care, which to the plaintiffs' understanding would have avoided Mr. Brady's death.  (Docket No. 1, at 12, ¶ 44 and Docket No. 19, at 12, ¶ 7.3.)

Dr. Batlle filed an answer to the complaint on April 27, 2007 and an amended complaint on September 13, 2007.  (Docket No. 11 and Docket No. 29.)  In both instances she denied all acts of negligence that were attributed to her, and in turn claimed that the treatment received by Mr. Brady fully complied at all times with the standards recognized by the medical profession under the particular circumstances of the case.  (Docket No. 11, at 5, ¶ 20 & at 7, ¶ 7 and Docket No. 29, at 5, ¶ 7.1 & at 7, ¶ 7.)  Also, according to the defendant the damages suffered by plaintiffs are not related to, nor were they caused by, the medical care and treatment that she provided.  (Docket No. 11, at 7, ¶ 8 and Docket No. 29, at, 7, ¶  8.)

On August 14, 2009, defendant moved to exclude Dr. Brown from testifying as plaintiffs' expert witness.  (Docket No. 66.)  Defendant argued that Dr. Brown's expert opinion was not supported by any medical journal, that it was inconclusive, and that it did not establish any breach of a standard of care.  (Docket No. 66, at

2, ¶ 7.) Furthermore, the defendant argued that Dr. Brown's deposition testimony and expert report did not determine specific facts and the basis of his opinion. (Docket No. 66, at 2, ¶ 8.)  Thus, the defendant requests that Dr. Brown be disregarded as an expert witness since it believes that his opinion relies solely on his knowledge and experience and not on a professional, medical and/or scientific basis.  (Id. at 7-8, ¶¶ 16 & 22.)

On September 11, 2009, plaintiffs replied.  (Docket No. 69.)  In essence, they claimed that:  (1) Dr. Brown's qualifications were quite extensive; (2) that expert opinions, such as Dr. Brown's, based on medical training and experience are perfectly admissible in medical malpractice cases; and (3) that Dr. Brown did not fail to support his opinions with specific facts since he had explained the numerous deviations from the standard of care that were attributed to the defendant.  (Docket No. 69, at 2 & 4, ¶¶ 3-8.)

## II.  ANALYSIS

### A.  MOTION *IN LIMINE*

1. Standard for Admission of Expert Testimony

Rule 702 of the Federal Rules of Evidence governs the admission of expert testimony at trial.  It provides that:

> If scientific, technical, or other specialized knowledge will
> assist the trier of fact to understand the evidence or to
> determine a fact in issue, a witness qualified as an expert

CIVIL 07-1085 (ADC)                              4

> by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Trial judges have been assigned the "roll of gatekeepers to screen expert testimony that although relevant, was based on unreliable scientific methodologies." González-Pérez v. Gómez-Águila, 296 F. Supp. 2d 110, 113 (D.P.R. 2003) (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993)). Therefore, judges as gatekeepers must ensure that the following requirements "be met before expert testimony may be admitted: (1) the expert is qualified to testify by knowledge, skill, experience, training, or education; (2) the testimony concerns scientific, technical, or other specialized knowledge; and (3) the testimony is such that it will assist the trier of fact in understanding or determining a fact in issue." González-Pérez v. Gómez-Águila, 296 F. Supp. 2d at 113 (citing Correa v. Cruisers, A Division of KCS Int'l, Inc., 298 F.3d 13, 24 (1st Cir. 2002)).

The "testimony or report of an expert witness may be used if it is 'operationally helpful' in assisting the trier of fact in understanding evidence and determining the fact in issue." Figueroa v. Simplicity Plan de P.R., 267 F. Supp.

CIVIL 07-1085 (ADC)                            5

2d 161, 164 (D.P.R. 2003) (quoting Justo Arenas & Carol M. Romey, *Professional Judgment Standard and Losing Games for Phsycology, Experts and the Courts*, 68 Rev. Jur. U.P.R. 159, 170 (1999)).  This means that "a testimony or report is deemed to be beneficial if it can diagnose and give an opinion of the type of event that could have caused plaintiffs' conditions or aggravated any of plaintiffs' conditions."  Figueroa v. Simplicity Plan de P.R., 267 F. Supp. 2d at 164.

However, when assessing if the expert's testimony will assist the trier of fact in understanding and determining the facts in issue, the court must first determine:  (1) whether the reasoning or methodology underlying the expert testimony is scientifically valid, and (2) whether the reasoning or methodology can be applied to the facts of the case.  Daubert v. Merrell Dow Pharms., Inc., 509 U.S. at 592-93.  Second, trial judges also have "to ensure that an expert's testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" United States v. Mooney, 315 F.3d 54, 62 (1st Cir. 2002) (quoting Daubert v. Merrell Dow Pharms., Inc., 509 U.S. at 597).

In other words, "the information provided by an expert must be reliable and relevant to the facts of the case."  Figueroa v. Simplicity Plan de P.R., 267 F. Supp. 2d at 164.  Thus, "an expert must be able to produce a written report or testimony supported by an accepted methodology that is based on substantial scientific, technical, or other specialized knowledge."  Id.  "This requirement is to

CIVIL 07-1085 (ADC)                          6

ensure that an expert witness 'employs . . . the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" Id. (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999)). "Failure to provide a testimony or a report detailing the basis for the expert's opinion in a comprehensive scientific manner can cause the expert witness and his report to be eliminated from trial." Figueroa v. Simplicity Plan de P.R., 267 F. Supp. 2d at 164 (quoting Arenas & Romey, *supra*, at 180.)

The trial court's function as gatekeeper is "'a flexible one' that depends upon the particular circumstances of the particular case at issue." González-Pérez v. Gómez-Águila, 296 F. Supp. 2d at 113 (quoting Thorndike v. DaimlerChrysler Corp., 266 F. Supp. 2d 172, 175 (D. Me. 2003) (quoting Kumho Tire Co. v. Carmichael, 526 U.S. at 150). Also, the trial court has "ample discretion when determining whether it should admit or exclude expert testimony." Bado-Santana v. Ford Motor Co., 364 F. Supp. 2d 79, 86 (D.P.R. 2005) (citing Irvine v. Murad Skin Research Labs., 194 F.3d 313, 320 (1st Cir. 1999)).

2. Standard of Care

"In order to succeed on their medical malpractice claim under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, section 5141, [p]laintiffs bear the burden of establishing, by a preponderance of the evidence: (1) the duty owed; (2) an act or omission transgressing that duty; and (3) a sufficient causal

CIVIL 07-1085 (ADC)                              7

nexus between the breach and the harm." Cruz-Vázquez v. Mennonite Gen. Hosp., Inc., 613 F. Supp. 2d 202, 210 (D.P.R. 2009).

"In a medical malpractice case such as this, Puerto Rico law holds physicians to a national standard of care." Id. (citing Cortés-Irizarry v. Corporación Insular de Seguros, 111 F.3d 184, [190] (1st Cir. 1997)).  This means, that "a physician has a duty to use the same degree of expertise as could reasonably be expected of a typically competent physician in the identical specialty under identical or similar circumstances, regardless of regional variations in professional acumen or level of care." Id.

Furthermore, "Puerto Rico law presumes that a doctor observes a reasonable standard of care in treating a patient, so a plaintiff has the burden of refuting this presumption." Id. (citing Rolón-Alvarado v. Municipality of San Juan, 1 F.3d 74, 78 (1st Cir. 1993)).  In order to refute this presumption, "the plaintiff must first establish the physician's duty of care.  Because medical knowledge and training are critical to demonstrating the parameters of a physician's duty, the minimum standard of acceptable care is almost always a matter of informed opinion.  Thus, it must ordinarily be established by expert testimony." Id. (citing Oliveros v. Abreu, 1 P.R. Offic. Trans. 293, 315, 101 D.P.R. 209 (1973)).

CIVIL 07-1085 (ADC)                                              8

## B. APPLICATION

In her motion, defendant argues that Dr. Brown's expert opinion will not aid the court in understanding the facts in issue. Defendant's argument is based on the notion that Dr. Brown's expert opinion is unsupported by any medical journal, that its inconclusive, and that it does not establish any breach of a standard of care. (Docket No. 66, at 2, ¶ 7.) More precisely, defendant argues that Dr. Brown's expert opinion is based only in his knowledge and experience and not on a professional, medical and/or scientific basis. (Id. at 7-8, ¶¶ 16 & 22.)

Plaintiffs on the other hand argue that Dr. Brown is a qualified expert. Plaintiffs aver that Dr. Brown is a Board Certified Cardiologist with a subspeciality in Nuclear Cardiology who has: (1) over 20 years of both clinical and teaching experience; (2) been a full professor at the University of Vermont College of Medicine since 1996; (3) been a member of the editorial boards of several peer reviewed scientific journals; (4) obtained a significant number of research grants; (5) been a lecturer in numerous symposia; (6) published extensively in the field of cardiology. (Docket No. 69, at 2, ¶ 3.)

Besides emphasizing Dr. Brown's qualifications, plaintiffs point out that in his deposition he explained that he dedicated approximately 95% of his professional time to clinic practice, tending to patients and responding to consults from the emergency room in a tertiary university teaching hospital. Additionally,

CIVIL 07-1085 (ADC)                              9

plaintiffs state that Dr. Brown explained that his opinion regarding the standard of care and the deviations therefrom were based on his general training, knowledge, experience and upon his review of Mr. Brady's medical records. (Id. at 2, ¶ 4.)  Based on the foregoing, plaintiffs argue that defendant's motion be denied.

It is evident that the relevancy of Dr. Brown's testimony as an expert is not disputed.  Furthermore, after reviewing the record, I find that there is no controversy as to the fact that Dr. Brown has extensive medical education, training and experience in his field.  Thus, the first prong under the Daubert analysis is satisfied.  The reliability of Dr. Brown's testimony is challenged.  Specifically, the defendant questions the methodology used by Dr. Brown by arguing that his opinion was based only on his knowledge and experience and not on a professional, medical and/or scientific basis.  Nevertheless, I find that defendant's argument goes to the weight and credibility of Dr. Brown's testimony, and not to its admissibility. See United States v. Mahone, 328 F. Supp. 2d 77, 92 (D. Me. 2004) (citing United States v. Shea, 211 F.3d 658, 668 (1st Cir. 2000)).

Also, I find that defendant's contention that plaintiffs' expert witness opinion does not establish a breach of standard of care because it is unsupported by medical journals is in itself unavailing since the minimum standard of acceptable care is almost always a matter of informed opinion, which depends on

CIVIL 07-1085 (ADC)                              10

the expert witness' medical knowledge and training.  See Cruz-Vázquez v. Mennonite Gen. Hosp., Inc., 613 F. Supp. 2d at 210.

The record shows that Dr. Brown explained in his deposition the numerous deviations from the standard of care that were attributed to the defendant, such as: delay in the initial examination of the patient, failure to prescribe anticoagulation therapy, improper dosage of the beta-blocker prescribed, not following-up on the orders that the defendant gave to make sure they were followed, and having consulted an internal medicine specialist instead of a cardiologist.  Hence, there is no question that Dr. Brown's opinion, which is based on his analysis, training and experience does include a minimum standard of care required in medical malpractice cases such as the instant one.

Under Daubert it is not required that "the party who proffers the expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct." United States v. Mooney, 315 F.3d at 63 (quoting Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 85 (1st Cir. 1998)). This circuit has held that "[a]s long as an expert's scientific testimony rest upon 'good grounds, based on what is known,' it should be tested by the adversary process-competing expert testimony and active cross-examination-rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies. . . ." Ruiz-Troche v. Pepsi Cola of P.R.

CIVIL 07-1085 (ADC)                                  11

Bottling Co., 161 F.3d at 85 (quoting & citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. at 590 & 596); see also Mitchell v. United States, 141 F.3d 8, 17 (1998).

Daubert itself instructs us that "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. at 596. The aforementioned is based on the importance of an expert witness testimony, in cases such as the present one, in which the plaintiffs have the burden of proving that the defendant acted negligently.

### III.  CONCLUSION

In view of the above, I find the plaintiffs' expert witness testimony is both relevant and reliable. As such, it would assist the trier of fact in understanding the evidence and determining the ultimate issue of fact. Therefore, I recommend that defendant's motion to exclude Dr. Brown as an expert witness at trial be DENIED.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify

CIVIL 07-1085 (ADC)                                    12

the portion of the recommendation, or report to which objection is made and the basis for such objections.  Failure to comply with this rule precludes further appellate review.  See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 14th day of October, 2009.

                                    S/ JUSTO ARENAS
                                    Chief United States Magistrate Judge